Wolf v. Riverport Insurance is the next case for argument. Good morning. May it please the court, I'm Colin Dunn. I represent Susan Wolf. The first issue in the case is whether or not the motion for judgment of the pleading should have been granted. In our second amended complaint, we alleged that Riverport had discretion in how it adjusted her underinsured motorist benefits claim. In its answer, Riverport denied it had that discretion. That disputed fact should have led the judge to deny the motion for judgment on the pleadings based solely upon that disputed material fact. But if you were to delve into the actual contradictive language, the discretionary... The language you identified gave Riverport discretion to settle third-party claims against the insured, not claims by an insured like we have here against Riverport. So I think you have to look at the interplay between the endorsement and the business coverage auto form. So true, the business coverage auto form does say that they have the right to investigate or settle any claim or suit they consider appropriate in the context of a third-party claim. When you look at the endorsement, the endorsement says that with respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement. That's on page A13 of the appendix. So in the endorsement when Riverport wants to modify the provisions of the coverage form, it expressly states so. If you look for instance on page A15 of the appendix, it talks about different provisions within the business coverage auto form that are modified. Where they add language, they replace language, they... So the point is, is nothing in the endorsement modified that language in the business coverage auto form that provided that contractual discretion in how it investigates and settles claims. So that is why that contractual discretion applies with equal force to a first-party claim like Ms. Wolfe's, not just the third-party claims. I'd also point out that at no point in this litigation has Riverport ever offered an alternative reading. We presented this in our complaint and every response... Why would it make sense for that provision to apply to suits by an insured against itself? So you'd give Riverport discretion to settle and investigate suits against itself? That makes no sense. They have the discretion in how they adjust the claim. Whether it be a third-party claim against an insured or whether it be an insured against... It's not only against the insurer. In the context of a UIM claim, the insurance company actually steps into the shoes of the tortfeasor. So I think if you look at it that way, it does make sense because effectively Riverport is defending the tortfeasor. It has all the same rights, defenses that the tortfeasor would have in defending the claim against Ms. Wolfe in this case. So it does make sense. I think the opposite is true, which it makes no sense that they would have discretion in how they adjust a third-party claim, but not how they would adjust the first-party claim. I think we'd be stunned if a deposition of any adjuster, he or she would say, I have no discretion on how I decide what information I want to review and what my eventual evaluation of the claim would be. As far as the second issue, the magistrate's finding that the adjuster here was a member of the control group. I understand that clearly erroneous is a tough standard on appeal, but there is nothing in this record that supports a finding that Mr. Howell is a second-tier control group member. He testified his only communications are with his supervisor. There's nothing in the record about his supervisor. There's nothing in the record from any member of top management who says, yes, I rely upon Mr. Howell's opinions in reaching a decision. There is just no basis to say that he is a second-tier control group member. Even his own affidavit indicates only, this is on page A71 of the record, of the appendix, that he advised the final decision-makers about the optimal handling of the claim. But there's no identification of who those people are. Usually in this context you get an affidavit from a Vice President of Claims who is undisputably in the control group who says, yeah, I rely upon my adjuster to tell me what we should do here. We don't have any of that evidence. Yes, the magistrate judge did review the documents, but her conclusion from those documents does not follow that he is a member of the control group. Simply because he talked to the attorneys doesn't make him a member of the control group, nor the fact that he has some decision-making power with its claim. The only decisions that matter are those made by top management. There's no evidence that he did anything with top management. Unless there's further questions, I'll reserve time for a vote. Certainly, counsel. Mr. Jaffe. May it please the court, Adam Jaffe for Riverport Insurance Company. This lawsuit began as a two-count complaint at law. Count one asserted a breach of contract claim, arguing that Riverport had improperly applied offsets under the terms of an insurance policy. Count two asserted a claim for section 155 statutory damages. Section 155 is, of course, Illinois's bad faith statute. The landmark event in this lawsuit, I would argue why we're standing here right now, occurred on March 11th, 2021, when Ms. Wolfe voluntarily, in open court, dismissed count one, the breach of contract claim in open court. The reason that this was of critical significance is that this left the section 155 count as the only remaining claim in this case. In other words, this lawsuit is now nothing more than a standalone section 155 claim that is untethered to an underlying action on the policy, as is required under Illinois law. In the interim, Ms. Wolfe has amended her complaint on two separate occasions, but the issue still remains. There's one count remaining, and while it's titled as a breach of contract claim, we know that it's really the substance of a count, not the title given to that count that determines what it's alleging. And everything in that count suggests that it's a standalone section 155 claim. Now, in a moment, I'll get to, you know, the Illinois Supreme Court cases like Kramer and Illinois Appellate Court cases that have made very clear that such a standalone section 155 claim cannot survive. But first, I'd like to make it abundantly clear why, in the first part, the second amended complaint does not set forth an action on the policy. As a threshold matter, all parties agree that this is a UIM claim. It's a first-party claim, as you pointed out, Judge Steeve. It's not a commercial auto liability claim, which would be a third-party claim. It's certainly not a commercial general liability claim, from which Wolfe also draws language on the discretion. So, accordingly, it's rather inexplicable that Wolfe is attempting to grab an insuring agreement from the commercial auto liability coverage and sort of force it into the underinsured motorist endorsement. And, you know, if I can take a moment, Judge Steeve, you really honed in on a key issue here. It would make no sense at all for that language to be inserted into the underinsured motorist claim for a very clear reason. Let's look at the language that's actually used that's, you know, in support of the argument that we have discretion, that Riverport has discretion in the UIM provision. It says, we may investigate and settle any claim or suit as we consider appropriate. Now, the we here is Riverport. The we here is not Wolfe. The we here is not anybody else. So, if we took that language and inserted it into the UIM endorsement, the underinsured motorist endorsement, you know, we would be theoretically able to, you know, settle any claim in a manner that we consider appropriate. This could be, here's a hundred dollars, have a nice date. We consider it appropriate. It makes very little sense in the first-party context. So, all of this to say is that, well, actually, let me say, as a fallback, Wolfe attempts to argue that a breach of covenant of good faith and fair dealing is, in itself, an action on the policy. This is an inaccurate statement of the law, as this court has made clear in cases like in Ray Kmart, Judge Easterbrook, that was a case that you wrote in 2006. The opinions speak for the court, not for their author. We do not want to make ad hominem arguments. Very good, Judge Easterbrook. As was held in Ray Kmart, the covenant of good faith and fair dealing is, quote, it's a rule of construction. It's not a standalone obligation created under a contract. In Illinois, the duty of good faith and fair dealing does not in here in every contract, correct? Meaning, for example, Wisconsin, it does. Every time you have a contract, there's a duty of good faith and fair dealing within it. Illinois's law is slightly different, is that correct? I believe that an argument could be made that it's an implied provision in a contract and that the parties have an obligation to enforce a contract, you know, in a way that would be reasonably expected by the parties. Now, how would it be reasonably expected by, how it's reasonably expected by the parties would be controlled by the language of the policy. So, you know, in the case of Kramer versus Insurance Exchange Authority, that's an Illinois Supreme Court case. The Illinois Supreme Court found that, quote, section 155 simply provides an extra contractual remedy to an action on the policy. Where there's no action on the policy, no section 155 claim results. And Kramer has been approvingly, and as best I could tell, unanimously relied upon in case after case in Illinois. Perhaps most directly... You certainly would hope that other judges would follow decisions of the Supreme Court of Illinois. Absolutely. I mean, this is this is most apparent in the Illinois Appellate Court holding in Krutal versus State Farm. Looking at that case, this is the facts, the factual predicate of that case clearly, clearly, clearly mirror the facts of this case. And, in fact, the alleged misconduct by the insurer in Krutal, virtually a copy and cut and paste of the alleged wrongdoing in this case. The Krutal case, the Illinois Appellate Court held, quote, since plaintiff section 155 claim was dependent on a successful breach of contract action, and she did not pursue that cause of action. Is this really helpful? Right? The argument you're dealing with is an argument about the meaning of the clause that gives discretion to settle claims. And you might want to direct your attention there, rather than to state precedent. Unless you've got state precedent about the meaning of that particular clause. Yes, Your Honor. So, well, what it comes down to is that the meaning of the clauses that are being relied upon by Wolfe have no place in the underinsured, in the underinsured motorist endorsement. If I can close, I'll briefly talk about the discovery issue raised by, raised by... Discovery issue is irrelevant when a case is dismissed under Rule 12c. Exactly, exactly what I was getting at. The discovery issue... Therefore need not be said. Thank you, Your Honor. With that, with that, unless there are any further questions, I will respectfully request that judgment be affirmed. Thank you. Mr. Dunn, anything further? Just a couple of points. Counsel just mentioned that a critical point in this case was when we voluntarily dismissed Count 1. I point out it took them almost a year after we did that to raise this standalone issue. So, if this was such an axiomatic point that they say it is, I don't understand why they didn't raise it sooner, but even with your prodding, Judge Easterbrook, they still have not addressed the language that we cited in our brief and again discussed today with Judge St. Eve, how that language applies to the endorsement. They've had multiple chances to do it. I think that's an implicit admission that it does in fact apply. If this idea that it would make no sense for them to have discretion in how they adjust underinsured claims, that they said you can have a hundred dollars, that's what our decision is, we would be here making a bad faith claim. That's why that makes no sense that they would have no discretion in how they do it. They have discretion, but then we can challenge whether they've abused that discretion in the context of the bad faith claim. Judge Brendan, you asked the question about the provision of good faith in fair dealing. We are not relying solely upon that implied duty. It's in connection with the contractual discretion to adjust the claim and the combination to that lead basis for a bad faith claim. And with that, I have no further comments. Thank you. Thank you, counsel. The case is taken under advisement.